## Smith & al. vs. Jones.

Where A. covenanted with B. and C. to convey to them certain timber lands on payment of a stipulated sum, a part in money and the remainder in their notes payable at a future day, with satisfactory security by mortgage, and B. tendered the money and notes signed by himself in the *partnership name of B. and C.*, and demanded a deed from A., it was held that the tender was, in this respect, sufficient; it appearing that B. and C. were partners in the business of purchasing real estate, dealing in timber lands, &c., and that they were recognised as such by the community.

Held further, that it was not incumbent on B. and C. to tender a mortgage of the land, with the money and notes, A. refusing to convey it to them.

It was further stipulated in the condition of the bond, that said money, notes and deed, were " to be deposited with W. T. P. of *Bangor*," until report made by a surveyor as to the quantity of timber on said land. *Held*, that a tender of them to A. himself at *Portland*, was insufficient.

This was an action of *debt* on bond. The defendant having craved oyer, pleaded, *non est factum*, and filed a brief statement alleging general performance. To which the plaintiff replied, setting out as a breach, the non delivery of the deed mentioned in the bond declared on.

The condition of the bond was in the following words, *viz :*
" The condition of this obligation is such, that whereas I, the said
" *Amasa Jones,* upon the terms and conditions hereinafter speci-
" fied, have agreed to sell and convey to the said *Edward Smith*
" and *Samuel Smith* by deed of warrantee, one undivided half
" of the south half of township No. one, in the sixth range of
" townships, lying and situate on *Salmon Stream* in said county
" of *Penobscot,* and being the same I purchased of *Waldo T.*
" *Pierce* and *Hayward Pierce,* and have also agreed to guarantee
" to the said *Edward* and *Samuel,* that there shall be at the rate
" of three and one quarter thousand feet of large, sound pine tim-
" ber, equal to that which has been cut on said half township,
" the present winter, by *Ira Wadleigh* and *Jesse Wadleigh,* of
" *Orono,* aforesaid, to each and every acre of said half township ;
" which timber is to be appraised upon said half township, by
" *Hiram Rockwood,* of *Belgrade,* within sixty days from the
" day of the date of the deed to be given by me as aforesaid ;
" and have also agreed to release and assign to said *Edward* and
" *Samuel,* one half of all the stumpage for logs, which have been

Smith & al. *v*. Jones.

"up to this date, or may hereafter, be cut upon said half town-
"ship; and have also agreed, that if upon the appraisal to be
"had as aforesaid, it shall appear that there is not timber on said
"half township, at the rate above stipulated, to allow to said *Ed-*
"*ward* and *Samuel*, for whatever deficiency there shall be, at the
"rate of three dollars for each thousand feet, the amount to be
"deducted, in equal sums from the cash and notes to be given to
"me by the said *Edward* and *Samuel*, as hereinafter specified;
"and have further agreed, that at the time I shall give the deed
"as aforesaid, the premises shall be free and clear of all incum-
"brances; the terms and conditions upon which the above sale is
"to be made are as follows, viz.: the said *Edward Smith* and
"*Samuel Smith* are to pay to the said *Amasa Jones*, the sum of
"seventeen thousand nine hundred and seven dollars and fifty
"cents, within twenty days from the date hereof, in manner fol-
"lowing, viz. one third part in cash, at the time of the sealing
"and delivery of the deed to be given as aforesaid, one third part
"in one year, and the residue of said sum in two years from said
"sealing and delivery, and interest, with satisfactory security by
"mortgage, and notice given by either of the parties to this obli-
"gation to the said *Rockwood* to make the appraisal aforesaid, to
"be binding on all; the report of the appraisal to be made by
"the said *Rockwood*, to be sworn to by him, and the charge and
"expense of making the said appraisal and report, to be paid one
"half by the said *Jones*, and the other half by the said *Edward*
"and *Samuel*; The deed, money, and notes given for the pur-
"chase money, to be deposited in the hands of *Waldo T. Pierce*,
"of *Bangor*, until the report of the said *Rockwood* of the ap-
"praisal of the timber shall be made: Now if I the said *Amasa*
"*Jones*, on the payment of the said sum of seventeen thousand
"nine hundred and seven dollars and fifty cents, to me by the
"said *Edward* and *Samuel*, in manner aforesaid, shall make, ex-
"ecute, and deliver to the said *Edward* and *Samuel*, a good and
"sufficient deed of warrantee as aforesaid, and in all things shall
"comply with, fulfil, perform, execute and discharge all and sin-
"gular the covenants, agreements, and promises by me to be per-
"formed, herein before recited, then this obligation to be void;
"otherwise to be and remain in full force and virtue."

Smith & al. *v.* Jones.

The plaintiff proved, that on the 14*th* of *January*, 1833, the bond being dated the 10*th* of the same month, *Edward Smith*, one of the plaintiffs, being then at *Portland*, tendered to the defendant $5969,17 in cash, and also two notes of that date, signed by the said *Edward*, in the name of *E.* and *S. Smith*, promising *Jones* to pay him or order $5969,17 in one year, with interest, and the like sum in two years with interest, and demanded the deed. They also proved that *E.* and *S. Smith* were partners in the business of purchasing real estate, dealing in timber lands, &c. and that their notes signed by either partner, as the above were signed, were uniformly discounted at the banks in *Bangor*, and duly paid.

When the tender was made, and the deed demanded, the defendant replied that he should not receive the money or notes, as they were going to *Mr. Pierce* at *Bangor*, and also added that he should not give a deed at present.

The plaintiffs both resided at *Bangor*, and there was no evidence that *Samuel* was at *Portland*, during the said month of *January*.

The defendant contended, 1. That it was not sufficient for the plaintiff to make a tender of the money and notes at *Portland*, but that he should have deposited them with *Mr. Pierce* at *Bangor*. 2. That the plaintiffs should both have been present and ready to execute the mortgage mentioned in the bond. 3. That the notes were insufficient, being signed by one, in the name of the firm. But intending to reserve these questions for the consideration of the whole court, and for the purpose of making progress in the trial, *Parris J.* ruled *pro forma*, and instructed the jury that the plaintiffs had a right to make the tender at *Portland*. And that if *Edward Smith*, at *Portland*, within twenty days from the date of the bond, did tender to *Jones* the money and notes aforesaid, and *Jones* had no reason to doubt that the notes were binding upon both *Edward* and *Samuel Smith* ; and that upon the facts proved, if believed, the notes were legally binding upon both, the plaintiffs had done all that it was necessary for them to do, in performance of the condition to be by them performed precedent to becoming entitled to a deed from *Jones*.

If this ruling was incorrect, the verdict, which was for the plaintiff, was to be set aside and a new trial granted.

*Mellen* and *Kent*, for the defendant, maintained the positions taken at the trial, and cited the following authorities : *Rodd* v. *Montgomery*, 20 *Johns.* 18 ; 2 *Burr.* 899 ; 2 *Doug.* 684 ; *Gardiner* v. *Corson*, 15 *Mass.* 500 ; 1 *Saunders*, 4, *note* 4 ; *Dana* v. *King*, 2 *Pick.* 115 : *Couch* v. *Ingersoll*, 2 *Pick.* 292 ; *Hunt* v. *Livermore*, 5 *Pick.* 395 ; 20 *Johns.* 24 ; *Goodwin* v. *Richardson*, 11 *Mass.* 469 ; *Pitts* v. *Waugh*, 4 *Mass.* 424 ; 3 *Kent's Com.* 15, 23, (second edition) ; 4 *Kent's Com.* 120 ; 1 *Vern.* 83.

*Rogers*, and *F. H. Allen*, for the plaintiffs, contended that the provision in the bond relative to depositing the notes with *Mr. Pierce* was intended for the benefit of the plaintiffs. This, they could waive, and did waive, by making the tender at *Portland*.

2. It was not necessary for the plaintiffs to tender a mortgage at the time of the tender of the notes and money. It would have been wholly inefficacious if they had. The refusal on the part of the defendant to convey, superseded the necessity of offering a mortgage on the part of the plaintiffs. *Howland* v. *Leach*, 11 *Pick.* 155 ; *West* v. *Emmons*, 5 *Johns.* 181 ; 8 *Cowen*, 297 ; 3 *Stark. Ev.* 1393 ; *Barstow* v. *Gray*, 3 *Greenl.* 409 ; *Nourse* v. *Snow*, 6 *Greenl.* 208.

Besides, it does not appear but that *Edward Smith* had the mortgage deed prepared and in his possession at the time, ready to hand over to the defendant, nor that he had not a power from *Samuel* to execute one if necessary.

It is said, that the bond contemplated a mortgage of other property. No such question can now be properly raised, not having been made at the trial. But it is manifest that such a position is inconsistent with a fair construction of the bond.

They argued further as to the sufficiency of the notes, the right of one of the plaintiffs to bind the other, and replied to the authorities cited on the other side.

EMERY J. — The plaintiffs have sued the defendant for not delivering a deed mentioned in the condition of the bond declared

on, and with the plea of *non est factum,* is a brief statement made by the defendant, alleging general performance.

The plaintiffs proved that on the 14th *January,* 1833, *Edward Smith* and the defendant being at *Portland,* said *Smith* tendered to the defendant, $5969,17 in cash, and two notes signed by the said *Edward,* in the name of *E. and S. Smith,* payable to the defendant or order for $5969,17 in one year with interest, and the like sum in two years with interest; and proved, that the said *E. and S. Smith* were partners in the business of purchasing real estate, dealing in timber lands, &c., and that their notes, signed by either partner, as the aforesaid notes were signed, were uniformly discounted at the banks in *Bangor,* and duly paid. Having made the tender, said *Edward* demanded the deed, to which the defendant replied he should not receive the money or notes as it was going to *Mr. Pierce* at *Bangor,* and also added that he should not give a deed at present. *Edward Smith* and *Samuel Smith,* both resided at *Bangor,* and there was no evidence that *Samuel* was at *Portland* during said month of *January.*

As to the binding efficacy of the notes tendered, it is objected, that there can be no partnership in the purchase of land, and the case *Pitts* v. *Waugh, et al.* 4 *Mass. Rep.* 424, is selected and pressed upon us as decisive of this. That was an action of the case against *John Waugh and Joseph Greely.* The note offered in evidence was signed by *John Waugh* alone.

" On the plaintiffs offering to read this to the jury, and to prove " also that before and at the time of making and signing said note, " the defendants were partners jointly negotiating together in the " way of merchandizing, particularly in the purchase and sale of " divers tracts of land, for their mutual advantage, and that said " note was made and signed by the said *Waugh,* on the partner- " ship account aforesaid, and for lands purchased for the joint " benefit of the defendants, but conveyed to said *Waugh.* This " evidence the Judge refused to admit; exceptions were taken, " and the motion for a new trial was submitted without argu- " ment." In the course of the opinion delivered by the late *C. J. Parsons,* as reported, he is made to say, that ", there was no " evidence offered that the land was conveyed by the plaintiff to

" *Waugh* and *Greeley*, or that *Greeley* in any manner authorised
" *Waugh* to bind him to the payment of the note : or that the
" plaintiff sold the land on *Greeley's* credit, or knew that he had
" any interest in the purchase, or did or could derive any benefit
" from it. This is decisive ; for by the law merchant a man is
" holden a dormant partner, who is not known in the partnership,
" because he is interested in the profits of the trade. And as
" the conveyance was made to *Waugh*, *Greeley* can derive no
" benefit from it," and the Judge repeats, " however, to prevent
" mistakes, that the law merchant does not extend to speculations
" in land," and that in that case, " there was no colour for con-
" sidering *Waugh*, as an authorised agent of *Greeley*, within the
" statute of frauds."

This opinion was made known at the *May* term, 1808. A
marked difference between that case and this is, that this bond is
given directly to the two *Smiths*, and the condition plainly indi-
cates that the notes are to be given by them to the defendant.
It is well settled that real estate, by the rules of law, is not gov-
erned by the principles applicable to the disposition of partner-
ship property. One partner can convey only his own share in
land, though held for the purposes of partnership, unless author-
ised by his partner, by deed to make conveyance of his portion.
The use may be regulated by particular agreements and covenants.
In equity, such property obtained by partnership funds, would be
treated as stock of the partnership.

Now, by *statute* of 28*th* of *February*, 1829, *ch.* 431, the in-
terest which any one has by virtue of a bond or contract in writing,
to a conveyance of real estate upon conditions to be by him per-
formed, whether he be original obligee or assignee, may be at-
tached on mesne process, or on execution, and sold, and the pur-
chaser have remedy to compel conveyance, by bill in equity.

Unquestionably there must be a mutual interest in the capital,
whether it consists in credit, labor, money, or other property, as
well as in shares in the profits, to constitute a partnership, *as be-
tween the parties*. And one who contracts for a share of the
profits of a particular trade or business, as profits, has, upon prin-
ciples of public policy as applied to commercial contracts, been

holden to be a partner, *as to third persons.* They would be liable for debts contracted in the regular prosecution of their business. And in this view of the transactions of *Edward* and *Samuel Smith,* as proved in the case, we think the direction of the Judge was correct, that upon the facts proved, if believed, the notes were legally binding upon both. They held themselves out to the world as partners. And they have ratified the acts of *Edward* in the very step of prosecuting this action, if any such subsequent ratification were required. As no intimation was made that security in mortgage was to be made upon other property than that contemplated to be conveyed, and as there was no objection on that account raised by the defendant, and indeed could not well be raised, until the first deed should be made by him, we do not consider the ground good, now insisted on, that the plaintiffs should have both been present at *Portland,* and ready to execute the mortgage mentioned in the condition of the bond.

There is more difficulty in coming to a conclusion as to the tender and the alleged refusal. In *Leatherdale* v. *Sweepstone,* 3 *C. & P.* 342, it was observed by *Lord Tenterden,* that a plea of tender, in practice was very seldom successful, and on that account, he was always sorry to see such a plea on the record. Here is no formal plea of tender, but the plaintiffs ground their claim upon such a state of facts, as they affirm would do them all the service that a plea of tender, in any allowable case, if thoroughly sustained, would give to any party.

If a condition be to pay, &c. at a place certain, without limiting any certain time, if the party to do this, meet the obligee or feoffee at the place, at any time, he may pay. *Co. Litt.* 211, *a.* Or if the obligee receives the money at another place, it is sufficient, though he *need not. Co. Litt.* 212. If a place certain be limited for payment, he is not bound to pay at another place. 1 *Roll.* 443, *L.* 20 ; *Com. Dig. Condition,* 9. *Neither need the other accept it at another place.* 1 *Rol.* 446, *L.* 5.

*Jones* " agreed that if, upon the appraisal to be had by *Hiram* " *Rockwood,* within sixty days from the date of the deed to be " given by said *Jones,* it should appear that there is not timber " on said half township at the rate of three and one quarter

" thousand feet of large sound timber to each acre, to allow to
" said *Edward* and *Samuel*, for whatever deficiency there should
" be, at the rate of three dollars for each thousand feet; the
" amount to be deducted, in equal sums, from the cash and notes
" to be given to said *Jones* by the plaintiffs. The deed, money,
" and notes given for the purchase money, to be deposited in the
" hands of *Waldo T. Pierce*, of *Bangor*, until the report of the
" said *Rockwood*, of the appraisal of the timber shall be made."
Then comes the final proviso : " if I the said *Amasa Jones,*
" on the payment of the said sum of seventeen thousand nine
" hundred and seven dollars and fifty cents to me by the said *Ed-*
" *ward* and *Samuel, in manner aforesaid,* shall make, execute,
" and deliver to the said *Edward* and *Samuel,* a good and suffi-
" cient deed of warrantee, as aforesaid," &c.

The plain and natural import of the terms, " in manner afore-
" said," and " as aforesaid," in relation to this subject, is, that
the payment would be good to him, the defendant, by depositing
the money and notes in the hands of *Waldo T. Pierce* of *Ban-*
*gor*, their mutually appointed depositary, and that depositing the
deed with him, would be the delivery " as aforesaid," to the
plaintiffs.

It is said that, " the plaintiffs had a right to waive this provi-
" sion, which was intended for their benefit." Had *Mr. Jones*
accepted the money and notes, ought it not to be inferred that by
the principles of good faith, he would have been bound to depos-
it them in the hands of *Waldo T. Pierce* ? But according to
the stipulation, he had a right *to decline becoming insurer of the
money and notes from Portland to the hands of Mr. Pierce of
Bangor. This act was to be performed in season by the plain-
tiffs.* The reply of the defendant, that " he should not receive
" the money or notes, as it was going to *Mr. Pierce*, at *Bangor*,"
was a full warning to the plaintiffs of the course they should pur-
sue ; and we cannot consider the additional remark, that " he
" should not give a deed at present," as so direct, peremptory,
and unqualified a refusal, as would dispense with the performance
by the plaintiffs of their part of the contract. For although *Ed-
ward* demanded the deed, the defendant would have performed
that part of his contract by depositing it in the hands of *Mr.*

*Pierce,* on the leaving there, by the plaintiffs, of the money and notes, within the twenty days. The case, at present, does not show that this duty on the part of the plaintiffs has been performed. If it has been, and it should not be proved that the defendant deposited his deed within the proper period with *Mr. Pierce,* and has done also what appertained to him to do, the result of a further trial may settle the merits of the case.

Upon the facts now disclosed, we think that the *pro forma* ruling of the Judge for the purpose of the last trial, by instructing the jury " that the plaintiffs had a right to perform or tender " performance at *Portland,*" cannot be sustained. The verdict is therefore set aside.